IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

HELENA DIVISION

*******

GOOSEBAY HOMEOWNERS                CV 13-21-H-CCL
ASSOCIATION, LLC,

     Plaintiff,                            OPINION & ORDER

-v-

BUREAU OF RECLAMATION,
UNITED STATES DEPARTMENT
OF INTERIOR, MONTANA
DEPARTMENT OF FISH, WILDLIFE
AND PARKS, RUTH LEFEVER
and HOLLIS LEFEVER,

     Defendants.

*******

Before the Court is an Application for Temporary Restraining Order and

Preliminary Injunction filed by Plaintiff Goosebay Homeowners Association

("HOA") on March 29, 2013. The matter came on for hearing on April 8, 2013.

HOA was represented by Nathan Wagner.  The Bureau of Reclamation (the "BOR") was represented by AUSA Leif Johnson.  Defendants Hollis and Ruth Lefever ("Lefevers") were represented by Kevin D. Feeback.  Defendant Montana Fish, Wildlife and Parks ("MTFWP") has made no appearance in this matter.

Background

Plaintiff Goose Bay Homeowners Association ("HOA") is a membership organization comprised of 31 mobile home owners who rent trailer spaces in a 5-acre trailer court situated within a federal public recreation area near the waterfront.   Located on Canyon Ferry Lake, Goose Bay Marina is a 227-acre facility that is owned by the United States and managed by the BOR.  The private managers of the marina store and trailer court since 1986, Gerald and Muriel Reller (the "Concessionaire"), allowed their concession agreement ("Lease and Permit")[1] with the BOR to expire on December 31, 2012.[2]

---

[1]  The original concessionaire agreement was signed by the Montana Fish, Wildlife & Parks Department ("MTFWP"), not the BOR. In 1986, and years prior,

Prior to expiration of the Lease and Permit agreement, HOA members rented their trailer spaces from the Concessionaire pursuant to oral agreements. Now that there is no concessionaire and no concession agreement, the BOR has decided to modernize the Goose Bay Marina facility and is in the early planning stage of redesigning marina facilities and services. The marina's outdated and failing septic system is in need of substantial reconstruction.

The BOR gave the HOA members over one year's notice that they would be required to remove their mobile homes from the marina. (*See* ECF No. 5-2, referencing letters dated November 28, 2011, and December 13, 2011.) The BOR also gave the HOA members six months' notice that it intended to terminate

the MTFWP managed the recreation area for the United States under a Memorandum of Understanding with the BOR. It was therefore the MTFWP that originally allowed the Concessionaire to rent trailer spaces. The MTFWP withdrew from its management oversight of the recreation area some time in the mid-1990s. (ECF 5-4 at 33).

[2] The 2000 Lease and Permit agreement was set to expire in 2010, but the Concessionaire was given a two-year extension, to December 31, 2012, to allow the Concessionaire to correct multiple deficiencies in the marina's septic system. Because no action was taken by the Concessionaire, the lease extension expired on December 31, 2012.

electrical and water services by April 1, 2013, and a reminder that they must remove their mobile homes by April 30, 2013. (ECF No. 5-5 and 5-2.)

In response to the impending termination of septic service to the trailer court, HOA filed an action for declaratory judgment in Montana First Judicial District Court on March 21, 2013, claiming to be third-party beneficiaries of the Lease and Permit between the Concessionaire and the Bureau of Reclamation.[3] The HOA alleges in Count I that the most recent (now expired) Lease and Permit Agreement (the "July 14, 2000 Lease and Permit Agreement") is void for failure of the BOR to provide consideration for several modifications it made to the 1986 Lease. According to the HOA, after judicial rescission of the 2000 Lease agreement, the BOR should be compelled to renew the Lease and Permit

---

[3] There is, of course, the federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, available for the presentation of HOA's claims in federal court. However, the Declaratory Judgment Act does not waive sovereign immunity but only provides a remedy where jurisdiction already exists through another statute. *Brownell v. Ketcham Wire & Mfg.*, 211 F.2d 121, 128 (9th Cir. 1954); *see also Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1382-83, 1386 (1988) (holding that Declaratory Judgment Act does not provide an independent basis for jurisdiction).

Agreement for a ten-year term beginning in 2013. In Count Two of the Complaint, the HOA asserts a prescriptive easement against its neighbors, the Lefevers, who are private landowners. The HOA asserts that it is entitled to maintain the trailer court's septic drain field on Lefevers property by prescriptive easement. In Count Three, the HOA claims that Lefevers should be estopped from demanding that the septic drain field be removed because Lefevers' predecessor allegedly promised a prior concessionaire that the septic drain field would be allowed in perpetuity.

The state district court granted the HOA's *ex parte* application for temporary restraining order on the same day the complaint was filed. However, it appears to this Court that the state district court's temporary restraining order was void or voidable because it was based upon a complaint verified upon information and belief and not positively verified. *See* Mont. Code Ann. § 27-19-303(2)(b) ("An injunction order may not be granted on affidavits unless . . . the material allegations of the affidavits setting forth the grounds for the order are made positively and not upon information and belief."); *see also City of Great Falls v.*

*Forbes*, 247 P.3d 1086, 1088 (Mont. 2011) (injunction not to be granted unless

material allegations of the complaint are made positively and not upon information

and belief).  The complaint in state district court was based upon the verification

of Scott Joyner, a member of Goose Bay HOA, "based upon information and

belief." (ECF No. 11 at 10.)  This Court allowed Mr. Joyner to testify and thereby

to cure that problem, but in any event the state restraining order has expired by

operation of law.

Following the issuance of that temporary restraining order, the BOR

removed the case to federal court, as it was clearly entitled to do based upon this

federal statute:

> (a) A civil action . . . that is commenced in a State court and that is
> against or directed to any of the following may be removed by them
> to the district court of the United States for the district and division
> embracing the place wherein it is pending:
>> (1) The United States *or any agency thereof* . . . , for or relating to any
>> act under color of such office . . . .

28 U.S.C. § 1442.  This statute is to be broadly construed to favor removal.  *See*

*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252-53 (9th Cir. 2006).  This

case will not be remanded to state court as was suggested by Plaintiff HOA during

oral argument at the hearing on April 8.  A demand for declaratory judgment and

for specific performance as to a contract filed against an agency of the United

States is properly adjudicated in a federal court.   Note, however, the Declaratory

Judgment Act is permissive only and does not *require* a federal court to declare

the rights of the litigants.  Thus, "[i]f a district court, in the sound exercise of its

judgment, determines after a complaint is filed that a declaratory judgment will

serve no useful purpose, it cannot be incumbent upon that court to proceed to the

merits before staying or dismissing the action."  *Wilton v. Seven Falls Co.*, 515

U.S. 277, 286, 115 S.Ct. 2137 (1995) (discussing the DJA, 28 U.S.C. §§ 2201-

2202).

<u>The Application for Temporary</u>
<u>Restraining Order/Preliminary Injunction</u>

Plaintiff HOA now seeks an injunction against the BOR to prevent it from

terminating utility services and evicting HOA members from the trailer court at

Goose Bay Marina.  Plaintiffs claim that there are multiple factual issues that

should be determined by a jury, including the ultimate issue of whether the United States' failure to renew the 2000 Lease and Permit was reasonable.[4]  In the meantime, Plaintiff HOA seeks an injunction to prevent the BOR from evicting them.  In support of its application for injunction, the HOA relies upon the allegations of their Complaint:  that HOA members are third-party beneficiaries of the 1986 Lease and Permit, that the 2000 Lease and Permit is void for lack of consideration for the modifications contained therein, and that the BOR may not unreasonably deny the Concessionaire's right in 2013 to renew the lease for an another 10 year term.

Obviously, the first notable problem with HOA's request is that the

---

[4]  The general rule is that there is no right to a jury trial against the United States.  *See* Gregory C. Sisk, Litigation with the Federal Government: Cases and Materials 104 (2000).  "It has long been settled that the Seventh Amendment right to trial by jury does not apply in actions against the Federal Government." *Lehman v. Nakshian*, 453 U.S. 156, 160 (1981); 28 U.S.C. § 2402 ("[A]ny action against the United States under section 1346 [civil action or claim against the United States, not exceeding $10,000 in amount, ... founded ... upon ... any express or implied contract with the United States] shall be tried by the court without a jury. . . .").  Plaintiff HOA has no right to jury trial in this matter.

Concessionaire has not appeared in this matter, that the Concessionaire has failed to renew the Lease, and that the Concessionaire has failed to fix the marina's septic system to fulfill the BOR's condition for renewal. The second notable problem is that the Lease has now expired, and the HOA members no longer have any legal right to remain on this federal property. In fact, as of May 1, 2013, the HOA members will be trespassers upon the property. Nevertheless, HOA claims that it has shown a likelihood of success on the merits and the possibility of irreparable injury or serious questions and a balance of hardships tipping sharply in HOA's favor.

Legal Standard for Injunction

As the parties agree, the legal standard for issuance of an injunction is (1) whether the applicant is likely to succeed on the merits of its claims, (2) it is likely to suffer irreparable harm absent preliminary relief, (3) the balance of the equities tips in its favor, and (4) an injunction is in the public interest. *Winter v. Nat'l Res. Def. Council*, 555 U.S. 7, 129 S. Ct. 365, 374 (2008). The Ninth Circuit has allowed an alternative "sliding scale" test such that "serious questions going to the

merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal marks removed). However, 'serious questions on the merits' requires more than a simple preponderance of the evidence; plaintiff must demonstrate a "substantial case for relief on the merits." *Leiva-Perez v. Holder*, 640 F.3d 962, 968 (9th Cir. 2011).

## Sovereign Immunity

The first legal hurdle the HOA members face in attempting to show a likelihood of success on the merits or even serious questions is the United States' sovereign immunity from suit. "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (citing *Loeffler v. Frank*, 486 U.S. 549, 554, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988)); *FHA v. Burr*, 309 U.S. 242,

244, 60 S.Ct. 488, 84 L.Ed. 724 (1940). Unless a waiver of sovereign immunity can be established, courts have no subject matter jurisdiction over cases against the government, with the result in this case that the federal government or its agencies cannot be sued. *United States v. Mitchell*, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983). Indeed, a plaintiff such as HOA cannot sue the United States in *any* court of law, whether state or federal, unless the plaintiff can show that Congress waived the sovereign immunity of the United States to permit such suit. *See North Star Alaska v. United States*, 9 F.3d 1430, 1432 (9th Cir. 1993) (en banc). Such a waiver is strictly construed by the courts, meaning that where the waiver is uncertain or unclear, no waiver should be found. *See Fed. Aviation Admin. v. Cooper*, ___ U.S. ___, 132 S.Ct. 1441, 1447-48, 182 L.Ed.2d 497 (2012) ("Any ambiguities in the statutory language are to be construed in favor of [sovereign] immunity.") (citing *United States v. Williams*, 514 U.S. 527, 531, 115 S.Ct. 1611, 131 L.Ed.2d 608 (1995)).

One example of a waiver of sovereign immunity is discussed, for example, in *Orff v. United States*, 545 U.S. 596, 598, 125 S.Ct. 2606, 162 L.Ed.2d 54

(2005), wherein the Supreme Court found that Congress waived sovereign immunity when it enacted 43 U.S.C. § 390uu, which provides:

> Consent is given to join the United States as a necessary party defendant in any suit to adjudicate, confirm, validate, or decree the contractual rights of a contracting entity and the United States regarding any contract executed pursuant to Federal reclamation law.

This statute does not apply in the instant case, however, because ours is not a suit to determine the rights of a contracting entity and the United States.  In *Orff*, plaintiff farmer members of the Westlands Water District tried to utilize the section 390uu waiver of sovereign immunity in their suit against the United States because the United States had reduced the water provided to the Westlands Water District pursuant to a contract between the water district and the United States. The Supreme Court held that the section 390uu waiver was not available in a circumstance where there was no formal joinder of the United States, where the farmers were not the contracting party (but merely purported third-party beneficiaries), and where the farmers were attempting to sue the United States directly.  The Supreme Court explained that

> Section 390uu grants consent "to *join* the United States *as a necessary party defendant* in any suit to adjudicate" certain rights under a federal reclamation contract. (Emphasis added.) This language is best interpreted to grant consent to join the United States in an action between other parties--for example, two water districts, or a water district and its members--when the action requires construction of a reclamation contract and joinder of the United States is necessary. It does not permit a plaintiff to sue the United States alone."

*Orff*, 545 U.S. at 602. In this quotation the last word, 'alone,' should be interpreted to mean 'directly.' In other words, it is of no assistance that plaintiff may have additionally sued MTFWP and the Lefevers if plaintiff is directly suing the United States on a contract to which plaintiff is not a contracting party. The section 390uu waiver of sovereign immunity, strictly construed, simply cannot stretch that far.

In fact, as the Defendant BOR points out, Plaintiff HOA may sue the United States under the Tucker Act for contract damages on an implied contract in the Federal Court of Claims, which has "jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States. . . ." 28 U.S.C. § 1491(a)(1). Importantly, contract actions

in the Court of Claims are limited to monetary damages, because "the Court of

Claims has no power to grant equitable relief...." *Richardson v. Morris*, 409 U.S.

464, 465-66, 93 S.Ct. 629, 34 L.Ed.2d 647 (1973).[5]  In addition, under the Little

Tucker Act, this Court has concurrent jurisdiction over contract claims against the

United States for less than $10,000.  28 U.S.C. § 1346(a)(2).  However, the Little

Tucker Act only waives sovereign immunity for *monetary* claims under $10,000.

Thus, whether a claim premised upon an implied contract is brought before the

United States Court of Federal Claims or before this federal district court, there is

no waiver of sovereign immunity that would permit a party to obtain an injunction

against the United States or one of its agencies in a contract action.

Similarly, were Plaintiffs to present their claim for relief under the

Administrative Procedures Act ("APA"), they would find that the APA does not

---

[5]  Under the Tucker Act, equitable remedies are specifically allowed for "restoration to office or position, placement in appropriate duty or retirement status, and correction of applicable records" as relief incidental and collateral to monetary damages, 28 U.S.C. § 1491(a)(2), and for procurement disputes involving the federal agencies.  28 U.S.C. § 1491(b)(2).

waive sovereign immunity for claims having "[a]nother adequate remedy in a court. . ." or where the relief sought is expressly or impliedly forbidden by any other statute. "[T]he APA waives sovereign immunity . . . only if three conditions are met: (1) [the] claims are not for money damages, (2) an adequate remedy for [these] claims is not available elsewhere and (3) [the] claims do not seek relief expressly or impliedly forbidden by another statute." *Tucson Airport Authority v. General Dynamics Corp.*, 136 F.3d 641, 645 (9th Cir. 1998). In this case, the third prong is not met. Sovereign immunity cannot be waived for Plaintiff's claims under the APA because the Tucker Act impliedly forbids equitable relief (*e.g.*, an injunction against the United States premised upon an implied contract) except in very limited circumstances noted above and not at issue here. 5 U.S.C. §§ 704, 702.[6] Essentially, the APA cannot be used to achieve what Congress has

---

[6] Even if sovereign immunity were waived by the APA, renewal of the concessionaire's lease is a discretionary act that could not be compelled. Only legally required or non-discretionary acts by agencies can be compelled under the APA. *See Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 63, 124 S.Ct. 2373, 159 L.Ed.2d 137 (2004). The APA "empowers a court only to compel an agency 'to perform a ministerial or non-discretionary act,' or 'to take action

15

forbidden elsewhere.

HOA's claims against the BOR are contractually based because the claims are premised upon the concessionaire contract. "The jurisdictional issue . . . turns on the 'source of the rights upon which the plaintiff bases its claim.'" *General Dynamics Corp.*, 136 F.3d at 647 (quoting *North Star Alaska v. United States*, 14 F.3d 36, 37 (9th Cir. 1994)). HOA seeks the Court's ruling that the 2000 Lease and Permit should have been renewed (and, indeed, should be renewed for a 10-year term beginning in 2013) and that the contractual modifications inserted in the 2000 Lease and Permit are null and void for failure of consideration. HOA is thus seeking judicial interpretation of these contracts to determine their rights as third-party beneficiaries under the 1986 and 2000 contracts.[7]  Plaintiff HOA thus

upon a matter, without directing how it shall act.'" *Id.* at 64. Thus, the APA is a wholly inappropriate vehicle for the reformation of a government contract by overriding agency discretion.

[7]  However, even if there were a waiver of sovereign immunity, Plaintiff HOA could not succeed on a claim as a third-party beneficiary because the concessionaire contract does not clearly give HOA third-party beneficiary status. The HOA is an incidental beneficiary to the government contract because the concessionaire agreement grants no enforceable rights to the HOA.  Mere

presents a classic contract claim, but seeks a remedy (declaratory judgment and injunction) that is impliedly forbidden by the Tucker Act. Accordingly, the Court finds that the APA does not waive sovereign immunity to permit this Court to adjudicate Count I (HOA's claim for rescission of the 2000 contract).

There are important public policy goals that are served by the strict construction of any purported waiver of sovereign immunity. The thirty-one members of the Goose Bay Homeowners Association obviously have a long and very sentimental attachment to their trailer court, but the BOR stands in the shoes of the public at large, literally thousands upon thousands of individuals who also have an equally valid right to benefit from a modernized marina and recreation

---

description of the 31 mobile homes in paragraph 9(b) is a vague reference that cannot give rise to third-party rights under a government contract. *See Klamath Water Users Protective Ass'n. v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 2000); *see also Orff v. United States*, 358 F.3d 1137, 1145 (9th Cir. 2004) (under *Klamath*, beneficiaries deemed to be incidental unless government contract evinces "a clear intent to the contrary"), *aff'd on other grounds*, 545 U.S. 596 (2005); *Kremen v. Online Classifieds, Inc.*, 337 F.3d 1024, 1029 (9th Cir. 2003) (more stringent test applies to third-party beneficiary status vis-a-vis government contract); *Hook v. State of Ariz., Dept. of Corrections*, 972 F.2d 1012, 1015 (9th Cir. 1992) (incidental beneficiary lacks standing to sue on government contract).

area, as well as a safe and sanitary septic system.  As the United States Supreme

Court has explained, it is long-standing public policy to serve the community at

large:

> [I]t is one thing to provide a method by which a citizen may be
> compensated for a wrong done to him by the Government.  It is a far
> different matter to permit a court to exercise its compulsive powers to
> restrain the Government from acting, or to compel it to act.  There are
> the strongest reasons of public policy for the rule that such relief
> cannot be had against the sovereign.  The Government as
> representative of the community as a whole, cannot be stopped in its
> tracks by any plaintiff who presents a disputed question of property or
> contract right.  As was early recognized, 'the interference of the
> Courts with the performance of the ordinary duties of the executive
> departments of the government would be productive of nothing but
> mischief.'

*Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 704, 69 S.Ct. 1457

(1949) (quoting *Decatur v. Paulding*, 14 Pet. 497, 516, 10 L.Ed. 559 (1840)).

Even if the Plaintiff HOA were able to fully litigate their claim against the BOR

on the merits, the Court is inclined to believe that they could not succeed given

that the BOR desires to redesign the marina and construct a new septic system.  To

allow the HOA to stop a government agency in its tracks in its sincere pursuit of

18

the public good would be mischief indeed.

Following the hearing on this matter, on April 10, 2013, the Plaintiff HOA filed an Amended Complaint adding a claim (Count Four) under the National Environmental Policy Act. By this claim, Plaintiff asserts that "[t]he BOR's refusal to properly consider whether the removal of the mobile homes may result in contamination of the Goose Bay property by asbestos, chrome, mercury, lead paint or other hazardous materials is a violation of NEPA and the APA." (ECF No. 21 at 11-12.) Plaintiff claims that the removal of their mobile homes from the trailer park may harm the environment. However, this Amended Complaint is not a verified complaint, and Plaintiff provides no material allegations to support the allegation in Count Four. Such a claim, at this point, appears to be entirely speculative as to the possibility of environmental damage. Plaintiff's allegation that the BOR has refused to consider any potential contamination caused by removal of the mobile homes is likewise speculative. Nevertheless, Plaintiff believes it has presented a substantial question that would justify an injunction against removal of their mobile homes under NEPA.

To suggest, as this claim does, that the BOR cannot evict 31 unpermitted mobile homes from federal land without first conducting a full-blown environmental analysis is absurd. This is not a major federal action.[8]  In fact, removal of the mobile homes is to be performed by the private parties at their own expense, not by or at the expense of the federal agency. (Gvt. Ex. 102, ECF No. 17-2.) NEPA is not applicable to the actions of private parties.[9]  While, it is true that the BOR is evicting the HOA members from this federal property, it is not true that any environmental damage caused by *their* removal of *their* mobile homes would therefore be caused by the agency.

The Court distinguishes *Berryessa for All v. U.S. Bureau of Reclamation*,

---

[8] NEPA requires agency preparation of an environmental impact statement for "major federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C).

[9] *Wetlands Action Network v. U.S. Army Corps of Engineers*, 222 F.3d 1105, 1114 (9th Cir. 2000) ("[B]ecause NEPA requires action only by the government, only the government can be liable under NEPA. . . . Because a private party can not violate NEPA, it can not be a defendant in a NEPA compliance action.") (*abrogated on other grounds*, *Wilderness Soc. v. U.S. Forest Service*, 630 F.3d 1173 (9th Cir. 2011)).

2007 WL 4209551 (N.D. Cal. 2007),[10] which was initially argued by the BOR at the injunction hearing and is now relied upon by HOA in its supplemental brief (ECF No. 22), because the instant case is quite different on multiple levels-- factually, legally, and procedurally.  In *Berryessa*, the seven concessionaire agreements governing the operation of seven resorts on BOR land had not yet expired.  However, the BOR's intent to evict 1200 mobile home owners living on BOR land was set forth explicitly in the BOR's final record of decision known as the BOR's Visitor Services Plan for the Lake Berryessa recreation area.  The Visitor Services Plan was actually a redesign project for the entire Lake Berryessa area, and was officially entitled the "Future Recreation Use and Operations of Lake Berryessa, Solano Project, Napa California, Mid-Pacific Region."  *Berryessa*, *1 fn1.  On order from the BOR, the concessionaires had sent out

_____

[10]  In *Berryessa for All v. U.S. Bureau of Reclamation*,  2008 WL 2725814 (N.D. Cal. 2008) ("*Beryessa II*"), the district court granted summary judgment to the Bureau of Reclamation and denied summary judgment to Berryessa for All. The district court found that the BOR had fulfilled all NEPA requirements in its redesign of the recreation area and that a categorical exclusion applied to exclude the proposed removal of the 1200 mobile homes from NEPA review.

eviction notices to the mobile home owners. Not only had a final record of decision been prepared by the BOR, but a final environmental impact statement had been issued prior to the BOR's final decision. Without doubt, this was a major federal action. Full NEPA process was therefore due, and the BOR complied with the NEPA process.

Even with these factual and legal distinctions in mind, it is noteworthy for our purposes that the district court in *Berryessa* still refused to grant plaintiff Berryessa for All a preliminary injunction compelling the BOR to rescind its order to the concessionaires requiring them to issue eviction notices and instructions to the "long-term permit holders to demolish their homes and improvements." *Id.* at *2 fn.4. At a minimum, Berryessa for All requested that the district court allow them to continue living at Lake Berryessa while their NEPA challenge ran its course in litigation. The district court would not grant that relief because "the court [was] doubtful that it could order BOR to extend the current contracts or issue permits to the permittees." *Id.* at *4. Such matters were deemed to be within the agency's discretion and beyond the reach of the district court. So too here.

Furthermore, even were the HOA members in precisely the same circumstances as Berryessa for All, the district court decided in that case that "[t]he long-term permittees' legal right to stay on the federal land ends when their permits expire." *Id.* at *5.[11] In this case, the HOA member's permits already expired on December 31, 2012, when the Lease and Permit agreement expired. Beyond the fact that Berryessa for All did not obtain a preliminary injunction, Plaintiff HOA is not in as strong a position as the Berryessa plaintiff. Therefore, the decision in *Berryessa* is of no legal support to HOA in its pursuit of a preliminary injunction.

Returning then to HOA's Count Four claim alleging NEPA violation, the Court has reviewed HOA's allegation that the BOR has failed to consider the environmental damage that may result from the removal of their mobile homes

---

[11] The district court in *Berryessa* noted that any future overstaying of a permit could put the mobile home owners in trespass, citing *Sweetnam v. Babbitt*, No. Civ. 94-0053 PHX RCB (D. Ariz. Jan. 24, 1994), for the proposition that "trailer park tenants had no right to remain in possession after expiration of concession contract under which they had leased trailer sites." *Berryessa* at *5.

from the trailer court.  The Court has concluded that removal of the mobile homes

is a private action to be performed by the HOA members, and NEPA does not

apply to these private removals of property.  Thus, any environmental damage

resulting from HOA members' removal of their mobile homes would be caused by

the HOA members, not by the BOR.

"NEPA requires 'a reasonably close causal relationship' between the

environmental effect and the alleged cause.  The [Supreme Court] has analogized

this requirement to the 'familiar doctrine of proximate cause from tort law.'"

*Dep't of Transportation v. Public Citizen*, 541 U.S. 752, 767, 124  S.Ct. 2204

(2004) (quoting *Metropolitan Edison Co. v. People Against Nuclear Energy*, 460

U.S. 766, 775, 103 S.Ct. 1556, 75 L.Ed.2d 534 (1983)).  If any environmental

damage is caused by the removal of a mobile home it will be proximately caused

by the private owner performing the removal, not the BOR.[12]  Because the removal

---

[12]  Undoubtedly, should the BOR be forced to remove one or more mobile
homes, the agency will observe all applicable environmental regulations to ensure
that no environmental damage ensues or, at the very least, that any environmental
damage is mitigated.

of the mobile homes is an action by a private party and not a major federal action,

the Court concludes that the NEPA process is not relevant to Plaintiff HOA's

April 30, 2012, eviction from Goose Bay Marina. In short, the Count Four claim

is plainly, on its face, implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129

S.Ct. 1937, 173 L.Ed.2d 868 (2009) (Sufficient factual matter, accepted as true,

must "state a claim to relief that is plausible on its face"). The Court cannot

conceive a possible amendment to Count Four that would entitle Plaintiff to entry

of relief and finds therefore that amendment would be futile and would result in

undue delay and prejudice to the opposing party.

Plaintiff's Claims Against Lefevers

In view of the fact that Plaintiff's federal claims against the BOR fail

entirely, that diversity jurisdiction is lacking between Plaintiff HOA and its

neighbors, the Lefevers, and that the HOA asserts purely state law claims against

Lefevers, this Court finds that the balance of factors (judicial economy,

convenience, fairness, and comity) does not favor exercising supplemental

jurisdiction over Plaintiff's Count Two claim for prescriptive easement and

Plaintiff's Count Three claim for promissory estoppel. *See* 28 U.S.C.

§ 1367(c)(3); *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997)

("[I]n the usual case in which all federal-law claims are eliminated before trial, the

balance of factors . . . will point toward declining to exercise jurisdiction over the

remaining state-law claims." (internal citation omitted)).


<u>Conclusion</u>

The Court concludes that Plaintiff Goose Bay Homeowners Association and

its member trailer owner/occupants are without any legal entitlement to remain at

the Goose Bay Marina after April 30, 2013. The HOA has no enforceable rights

against the BOR under the expired concessionaire contract. As a matter of law,

the BOR has sovereign immunity from HOA's Count One contract claim against

the BOR. On the merits, the HOA is not a third-party beneficiary and has no legal

right to compel agency action on a contract claim. As to Count Four, the HOA

members' removal of their mobile homes from federal land is not a major federal

action requiring NEPA analysis. The Court concludes that HOA has failed to

show that it is likely to succeed on the merits of its claims (or even that there are

serious questions going to the merits) or that the balance of the equities tips in its

favor.  Moreover, importantly, the evidence clearly shows that an injunction

against the BOR would not be in the public interest.  Accordingly,

IT IS HEREBY ORDERED that Plaintiff's Application for Temporary

Restraining Order and Preliminary Injunction (ECF No. 3) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Amended Complaint (ECF No.

21) is DISMISSED for lack of subject matter jurisdiction as to Counts One, Two,

and Three, and for failure to state a claim upon which relief can be granted as to

Count Four.  Plaintiff shall take nothing by its Amended Complaint.  Let judgment

enter.

Done and Dated this 22nd day of April, 2013.

CHARLES C. LOVELL
SENIOR UNITED STATES DISTRICT JUDGE